ROBERTSON, Justice:
Larry Walker was indicted, tried and convicted in the Circuit Court of the First Judicial District of Hinds County of the murder of Billy McAlpin. He was sentenced to life imprisonment in the Mississippi State Penitentiary.
Shortly after midnight on February 19, 1972, William Ray Torrence and Billy Ray Bailey got into a heated argument in front of the bandstand at the Wagon Wheel nightclub in Jackson. Two off-duty policemen employed by the Wagon Wheel intervened and ordered both Bailey and Torrence to leave. Torrence left with a group that included Walker, Johnny R. Baker and Harry Hopkins. They left in Baker’s two-door car with Baker driving, Walker on the passenger side of the front seat, Torrence on the back seat behind Baker and Hopkins on the back seat behind Walker, and proceeded to the parking lot at the corner of Roach and Capitol Streets in Jackson.
As Baker drove into the parking lot, Bailey and his friends also arrived at the same parking lot. The argument between Bailey and Torrence was resumed but shortly thereafter Torrence returned to Baker’s car, getting back on the rear seat behind the driver. Walker continued to talk or argue with the Bailey group. He came back to the Baker car and asked Torrence to get out and fight Bailey. *845 Torrence refused and Walker again talked with the other group. Again he returned to the Baker car and asked Torrence to get out and fight Bailey. Torrence again refused, and Walker went to the right side of the Baker car, reached under the front seat and got a pistol, and then walked back around the car.
In the meantime, Billy McAlpin had walked over to the parking lot and was standing next to his friend, Bailey. Mc-Alpin had his hands in his pockets, his fingers on the inside and his thumbs on the outside. McAlpin had not been involved in any of the arguments that had taken place, and there were no words passed between Walker and McAlpin.
According to the state’s witnesses, Walker, without any further words with the Bailey group when four or five feet away from Bailey and McAlpin, shot one time with a 38-caliber pistol. The bullet hit McAlpin in the left temple, and he fell.
Policemen, who had been drinking coffee at the Mayflower Cafe across the street from the parking lot, rushed to the scene, blocked the exit from the parking lot, stopped the Baker car, and ordered all occupants out of the car. After finding a 38-caliber pistol under the passenger’s side of the front seat, where Walker had been sitting, they arrested Walker. The pistol had been fired one time.
On the trial, the only defense interposed and asserted was that the appellant inadvertently and accidentally fired the fatal shot.
Torrence testified that immediately before he heard the shot appellant Walker had walked to the front seat of the Baker car, got something from under the front seat, saying something like “I’ve had enough of it”, or “I’m going to stop it.” One of the other eyewitnesses testified that appellant used stronger and more profane language when he reached under the front seat of the Baker car. Appellant testified in his own defense that the shooting occurred in this way:
“A Well, I was standing there with the gun pointing down on my side and just holding it in my hand. And I was telling Billy Ray to ‘Please, let’s all break it up and go home before we all get in trouble.’ And just as I said this, I noticed this boy moving toward me and I turned around and throwed my hands up to block him, and just as I throwed my hands up the gun went off, and all I remember is the boy said, ‘Don’t push.’

“Q What did you throw your hands up for?
“A To keep him from falling on me. I didn’t, you know, I didn’t intend to throw my hands up to shoot the boy. I just throwed my hands up because the boy was falling in my face.”
In rebuttal, Jackson policeman Clark testified :
“A He told us that McAlpin reached and grabbed his arm as if to attack him. At this time he stated that the gun went up along with the hand and the gun fired and shoot McAlpin.
“Q And he said that McAlpin did grab his arm ?
“A He grabbed his arm is the way he told it.
“Q Did he say whether or not he lunged at him ?
“A He said that McAlpin grabbed him — they was close together, reached and grabbed his arm, the one he had the gun in.”
Jackson policeman Malone testified that, immediately after they had peached police headquarters, appellant made the statement that he thought McAlpin had a gun and that that was the reason he shot him. Jackson policeman Fillingane testified that McAlpin was lying flat on his back with his hands in his pockets, that McAlpin had on tight fitting trousers, and that there was no bulge of any kind in any part of his trousers. No weapon of any kind was found on McAlpin or in the area around him. A small amount of change and possi *846 bly a fingernail clipper was all that was found on McAlpin.
Appellant assigned only three errors:
1.
“The verdict is contrary to the overwhelming weight of the evidence and the law.
2.
“The Court erred in granting each and every instruction for the State.
3.
“The trial court erred in overruling Appellant’s Motion for a new trial.”
There is no merit in the first and third assignments of error.
The appellant finds fault with eight of the nine instructions secured by the State. Yet, even though appellant was defended by two of the most experienced and able criminal lawyers in the state, no objection whatsoever was made to any of these instructions, which appellant now vigorously contends were so manifestly and patently wrong that the court should so find on its own.
Rule 42 of the Supreme Court provides in part:
“It is, therefore, the rule of this Court that no assignment of error based on the giving of an instruction to the jury will be considered on appeal unless specific objection was made to the instruction in the trial court stating the particular ground or grounds for such objection. However, in extreme cases this Court may raise an objection to a jury instruction in order to prevent manifest injustice.” (Emphasis added).
Three of the eight instructions which appellant contends were so manifestly wrong were on self-defense; two dealt with transferred intent; one was on manslaughter; and one defined “malice aforethought”.
The principal argument of appellant is that there was no evidence in the record to justify the granting of these instructions. A careful reading of the record convinces us that the appellant is wrong in this assertion. There was evidence in the record to justify the granting of these instructions.
After carefully studying all eight of the instructions complained of, we have reached the same conclusion that appellant’s able, experienced and resourceful counsel apparently reached, that is, that there was nothing substantially wrong with these instructions and no specific objections could be conscientiously and sincerely made to any of them.
There was ample evidence in the record to justify the jury in reaching a verdict of guilty of murder beyond a reasonable doubt. The conviction and sentence are, therefore, affirmed.
Affirmed.
GILLESPIE, C. J., and SMITH, SUGG and BROOM, JJ., concur.